IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL SCHUR, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Civil Action No. 17-cv-546 (PGG) |
| STRATEGIC FINANCIAL SOLUTIONS, LLC and STRATEGIC CONSULTING, LLC, RYAN SASSON and KIM CELIC, | ) ) ) ) ) |
| Defendants. | ) ) |

## I. ISSUE PRESENTED

This motion presents the Court with the following question:

For this case to be conditionally certified as a collective action under the Fair Labor Standards Act ("FLSA"), Plaintiff must make a modest showing that he and other employees were victims of a common policy, plan or practice that violated the law. As a matter of policy, plan and practice, Defendants systematically failed to pay Plaintiff and other Sales Representatives all earned overtime wages due in violation of the FLSA. *See* 29 U.S.C. § 207(a)(1). Should this case be conditionally certified?

## II. INTRODUCTION

Named Plaintiff, Daniel Schur, is a former Sales Representative of Defendants. He brings this action on behalf of himself and other similarly situated non-exempt Sales Representatives ("Plaintiffs") alleging that Defendants denied them earned overtime wages in willful violation of the FLSA, 29 U.S.C. §216(b). Plaintiffs also allege that Defendants failed to maintain accurate records of their time worked. 29 C.F.R. §516.2.

To date, one additional former Sales Representative, Halton Bagley, has filed a consent-to-join form to become a Plaintiff in this collective action. *See* D.E. 23-1. Through this motion,

1

Plaintiffs seek an order granting conditional certification and court-facilitated notice under Section 216(b) of the FLSA.

### III. STATEMENT OF FACTS

A.  **The Parties**

   1.  **Named and Opt-in Plaintiffs**

Schur filed this collective action against Defendants on January 26, 2017 to redress their uniform failure to pay earned overtime wages to non-exempt Sales Representatives under the FLSA and New York Labor Law ("NYLL"). In their Complaint, Plaintiffs provided detailed allegations that Defendants' other Sales Representatives are similarly situated to the representative Plaintiff with respect to: 1) job duties and directives; 2) pay and timekeeping practices; and, 3) being subject to an illegal pay and timekeeping practice. *See* D.E. 1 [Complaint] at ¶¶11-36. Schur, Bagley, and all other Plaintiffs worked at Defendants' office located at 711 3rd Avenue, 6th Floor, New York, NY. *See* D.E. 1 at ¶8. In support of this motion, Schur presents detailed sworn testimony from himself and Bagley confirming that all of Defendants' Sales Representatives: 1) performed the same primary duty—selling debt consolidation services; 2) had the same pay plan; and, 3) were subjected to Defendants' common practices and directives which encouraged and compelled them to work well in excess of 40 hours in given workweeks, while failing to record or pay for all overtime wages earned. *See* Exhibit A [Schur Declaration] at ¶¶5-10, 18; Exhibit B [Bagley Declaration] at ¶¶5-10, 17. In other words, Plaintiffs worked off-the-clock. *Id*.

   2.  **Defendants**

Defendants' corporate headquarters are located at 711 3rd Avenue, 6th Floor, New York, NY, where Defendants formulated and implemented corporate policy decisions, including wage and hour practices. *See* Exhibit C [Defendants' website]. Defendants disseminated those policies

2

to all of their Sales Representatives. *See* D.E. 1 at ¶¶ 9, 10, 44, 51; *See* Exhibit A at ¶¶9-10; Exhibit B at ¶¶9-10. The individual Defendants, Ryan Sasson and Kim Celic, are controlling officers of Strategic Financial Solutions, LLC and Strategic Consulting, LLC (collectively "SFS") who controlled significant business functions such as devising, directing, implementing and supervising their wage and hour practices and policies. *See* D.E. 1 at ¶¶9-10; Exhibit D [Celic Affidavit] at ¶2. As such, these individuals are "employers" within the meaning of 29 U.S.C. §203(d) of the FLSA. *Id.*

**B.     Sales Representatives Are Similarly Situated**

    **1.     Sales Representatives Performed the Same Job Duties and Were Subjected to the Same Sales Policies**

Defendants employ Sales Representatives at their corporate headquarters at 711 3rd Avenue, 6th Floor, New York, NY 10017. *See* D.E. 1 at ¶11; Defendants' Answer to D.E. 1 at ¶11. The primary duty of Defendants' Sales Representatives is to sell debt consolidation services to potential customers of Defendants. *See* D.E. 1 at ¶12; Defendants Answer to D.E. 1 at ¶12; *See* Exhibit A at ¶6; Exhibit B at ¶6. Defendants required all of their Sales Representatives to call leads generated by SFS, communicate with potential customers by phone and email, qualify customers by analyzing their credit situation, and to sell SFS's debt settlement products. *See* Exhibit A at ¶6; Exhibit B at ¶6. All Plaintiffs were assigned a cubicle, an integrated desktop computer and telephone, and a designated telephone line. *See* Exhibit A at ¶4; Exhibit B at ¶4.

Defendants uniformly instituted, administered and enforced their sales policies to all of their Sales Representatives through their common training program, weekly meetings, supervision, production goals and quotas. *See* D.E. 1 at ¶¶64, 73, 94; *See* Exhibit A at ¶¶7-10; Exhibit B at ¶¶7-10. Defendants required their Sales Representatives to follow uniform policies to increase efficiency and promote standardization. They did so to sell more debt consolidation

3

products. To this end, Defendants: (1) established quotas for the total amount of unsecured customer debt Sales Representatives should enroll, which SFS progressively increased over time; (2) tracked, ranked, and displayed the current debt each Sales Representative had enrolled, displaying on large monitors the lowest-ranked Sales Representatives in red and terminating those employees if they remained "in the red" for more than two weeks; (3) directed Sales Representatives, during initial training and weekly meetings, to work a minimum of 10 hours, but to record no more than 8 hours, each weekday; (4) emphasized that Sales Representatives should begin work no later than 10:00 am and work late, including after 8:00 pm, given the importance of calling potential customers in states on Pacific Standard Time; (5) actively monitored Sales Representatives' hours worked and instructed them to clock out after 8 hours of daily work, but to continue working; and (6) altered and reduced the recorded number of hours worked by Sales Representatives who recorded more than 8 hours of time worked in any given day. *See* Exhibit A at ¶¶7-10, 15; Exhibit B at ¶¶7-10, 15. Defendants implemented these uniform duties and practices with respect to all Sales Representatives so that they would sell more debt consolidation services for Defendants, while enjoying substantial sums in ill-gained profits at the expense of their non-exempt employees.

> 2. **Defendants' Pay Plan, Timekeeping Practices and Common Scheme to Deny Overtime Wages**

Defendants had the same compensation plan for all their Sales Representatives, which consisted of hourly pay plus commission. *See* Exhibit A at ¶5; Exhibit B at ¶5. Both in their initial training and in the weekly meetings following training, Defendants instructed Sales Representatives to work at least 10 hours a day, and specifically that they should begin work before 10:00 am and end work past 8:00 pm. *See* Exhibit A at ¶¶9-10; Exhibit B at ¶¶9-10. But during the same training and meetings, Defendants also instructed Sales Representatives that,

4

while they were expected to work 10 or more hours a day, they generally should not record more than 8 hours worked a day. *Id.* SFS supervisors regularly instructed Sales Representatives to clock out at 8 hours worked, but to continue working off the clock. *See* Exhibit A at ¶15; Exhibit B at ¶15. When a Sales Representative attempted to record more than 8 hours worked in any given workday, supervisors would shave this compensable overtime from the time records to show no more than 8 hours. *Id.* The result was that notwithstanding the explicit FLSA requirements, Defendants failed to pay their Sales Representatives earned overtime compensation for all overtime hours worked. *See* Exhibit A at ¶17; Exhibit B at ¶16.

Defendants encouraged their Sales Representatives to work well in excess of 40 hours per workweek to close sales, while at the same time avoiding overtime pay when they worked overtime hours. As a result of Defendants' production goals, timekeeping directives and other uniform practices, Sales Representatives worked long hours but did not receive overtime pay for time exceeding 40 in given workweeks. *See* Exhibit A at ¶¶9-10; Exhibit B at ¶¶9-10. Defendants furthered their common scheme by keep inaccurate records of the time worked by their Sales Representatives, in violation of the FLSA. *See* 29 C.F.R. §516.2; *See* Exhibit A at ¶¶9-10, 13-15; Exhibit B at ¶¶9-10, 13-15.

SFS used ADP time and attendance software to record time worked by its Sales Representatives, requiring Sales Representatives to input their hours worked into the software through the sales portal "Velocify." *See* Exhibit A at ¶¶11-12, 14; Exhibit B at ¶¶11-12, 14. But Defendants modified these records so they did not accurately reflect Plaintiffs' actual work hours. For example, for the first two weeks of employment and training, members of SFS's Human Resources Department inputted time for the Sales Representatives. *See* Exhibit A at ¶13; Exhibit B at ¶¶13. While Sales Representatives worked from approximately 9:30 am or 10:00 am until

6:00 pm or 7:00 pm during their first two weeks, the Human Resources Department incorrectly recorded 8:00 am to 4:00 pm as their time worked each day during this period. *Id.* After these first two weeks, Sales Representatives were able to input their own time worked, but to conform to Defendants' policies on inputting time, generally recorded working only 8 hours in any given workday notwithstanding that they worked longer hours.  *See* Exhibit A at ¶14; Exhibit B at ¶¶14. SFS management actively monitored the time recorded by Sales Representatives and when a Sales Representative neared 8 hours worked, his supervisors would notify him that he should prepare to clock out at 8 hours, but to continue working after doing so. *See* Exhibit A at ¶15; Exhibit B at ¶15. Typically, when Plaintiffs recorded in excess of 8 hours in any given workday, Defendants would alter time entries to reduce the time worked and to avoid paying Sales Representatives overtime. *Id.*

      The policies and practices described above are uniformly applied by Defendants to all their Sales Representatives. Defendants have, therefore, failed to pay their Sales Representatives overtime, in direct violation of the FLSA, as a collective class. Because all of Defendants' Sales Representatives were subject to the same illegal compensation plan, implemented by the same managers at the same work location, this case should be conditionally certified.

## IV. ARGUMENT

**A.     This Court is Authorized to Issue Notice to Potential Opt-ins**

      Section 216(b) allows one or more employees to pursue an action in a representative capacity for other employees similarly situated who give their consent in writing. *Kew Sing Yap v. Mooncake Foods, Inc.,* 146 F.Supp.3d 552, 560 (S.D.N.Y. 2015). Until an employee opts into a

suit through written consent, the statute of limitations on her claims continues to run. *Varghese v. JPMorgan Chase & Co.*, 2016 WL 4718413, *5 (S.D.N.Y. Sept. 08, 2016).

The United States Supreme Court has authorized district courts to certify a collective action and facilitate notice to potential plaintiffs under 29 U.S.C. §216(b). *Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989); *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). Further, "courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management." *Hoffman v. Sbarro*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997). Because the filings of an FLSA claim does not toll the statute of limitations to other potential plaintiffs, "courts routinely approve court-authorized notice in order to ensure that potential claimants understand their rights and the erosion of their claims as time passes." *Bodrul Islam v. BYO Co. (USA), Ltd.*, 2017 U.S. Dist. LEXIS 95798, *3 (S.D.N.Y. June 20, 2017).[1]

To create an "opt-in" class under Section 216(b), an employee need only satisfy two basic requirements: 1) class members must be "similarly situated"; and 2) class members must affirmatively consent to join the action or "opt-in." *Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376, 387 (2d Cir. 2015); *Islam*, 2017 U.S. Dist. LEXIS 95798, *3.

District courts in the Second Circuit utilize a two-tier test to determine which employees are "similarly situated" under Section 216(b). *Myers*, 624 F.3d at 554-55; *Grant v. Warner Music Grp. Corp.*, 2014 WL 1918602, *3 (S.D.N.Y. May 13, 2014). During the first stage (the notice stage), the court determines whether notice should be given to potential class members, based typically on an examination of the pleadings and affidavits submitted by the parties. *Myers*, 624 F.3d at 555. Where a plaintiff satisfies the "minimal burden of showing that similarly situated individuals exist

---

[1] The Westlaw citation to Judge Gardephe's decision in *Islam* is not yet available.

and that court-authorized notice to members of the class action is appropriate," the court certifies the class as a collective action. *Schaefer v. M&T Bank Corp.*, 122 F.Supp.3d 189, 195 (S.D.N.Y. 2015). At the notice stage, as "the court applies a fairly lenient standard, courts typically grant conditional certification." *Malloy v. Richard Fleischman & Assocs. Inc.*, 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009). Such conditional certification requires nothing more than a "modest factual showing" that the plaintiff and "potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555. While this "modest factual showing" is not "satisfied simply by unsupported assertions," there still is a "low standard of proof because the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Id.*

Potential class members are then notified and provided with the opportunity to opt-in to the action. *Id*. Plaintiffs' claims and positions need not be identical to those of putative class members, but need only be similar. *Grant*, 2014 WL 1918602, at *8 (where this court held that the "key inquiry" in determining whether unpaid interns were "similarly situated" was whether Defendants had a policy of not paying interns who performed similar tasks to non-exempt employees, not whether the interns performed different tasks from one another). In the second stage, later in the litigation, the employer can move to decertify the class if discovery reveals that additional plaintiffs who opt-in to the lawsuit are not similarly situated. *Benavides v. Serenity Spa NY Inc.*, 166 F.Supp.3d 474, 479 (S.D.N.Y. 2016); *Myers*, 624 F.3d at 555.

The applicable standard here is also considerably "less stringent" than the proof required under Rule 23 of the Federal Rules of Civil Procedure regarding traditional class certification. *Hernandez v. Fresh Diet Inc.*, 2014 WL 5039431, *8 (S.D.N.Y. Sept. 29, 2014). Rule 23's class certification requirements do not apply to FLSA class actions, as "[t]he standard for class certification under Federal Rule of Civil Procedure 23 is, of course, not relevant to a FLSA

collective action . . . no showing of numerosity, typicality, commonality, or representativeness need be made." *Grant*, 2014 WL 1918602, at *3 (internal citations omitted).

At this stage, "the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." *Schaefer*, 122 F.Supp.3d at 194. At this initial stage of the litigation, Plaintiffs need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (citations omitted); *Benavides*, 166 F.Supp.3d at 478. Plaintiffs may establish this standard through substantial and detailed allegations in their Complaint, and with some modicum of evidentiary support such as affidavits. *Id*.

A Named Plaintiff need not show an actual FLSA violation, but rather that a "factual nexus" exists between his or her situation and the situation of other potential plaintiffs. *Schaefer*, 122 F.Supp.3d at 193; *Romero v. La Revise Assocs.*, 968 F.Supp.2d 639, 645 (S.D.N.Y. 2013) ("[t]he focus … is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated … with respect to their allegations that the law has been violated."). In FLSA actions regarding failure to pay overtime compensation, courts "regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice." *Grant*, 2014 WL 1918602, at *6; *O'Jeda v. Viacom, Inc.*, 2014 WL 1344604, at *1 (S.D.N.Y. Apr. 4, 2014).

**B.    Plaintiffs are "Similarly Situated" with Regard to Pay and Timekeeping Practices, Job Duties, Office Location and Supervision.**

Notice should be issued in this case because Plaintiffs are similarly situated and are all subject to Defendants' illegal compensation policy. *See* Exhibit A at ¶18; Exhibit B at ¶17. Under the FLSA, showing that Plaintiffs are similarly situated requires a "modest factual showing" that a Defendant's employees were subject to the same unlawful compensation policy. *Grant*, 2014

WL 1918602, at *3; *Schaefer*, 122 F. Supp. 3d at 193. This "modest factual showing" is easily met in the instant case as all of Defendants' Sales Representatives worked in the same New York office, received the same or similar training, performed the same or similar duties, were classified as non-exempt, and received the same directives and corresponding incentives to work well in excess of 40 hours a week, yet record and were paid for no more than 40 hours, save for rare exceptions. *See* D.E. 1 at ¶ 11-21; *See* Exhibit A at ¶¶4, 5, 7-12, 15-16, 18; Exhibit B at ¶¶4, 5, 7-12, 15, 17.

The primary duty of Defendants' Sales Representatives is to sell debt consolidation services to potential customers of Defendants. *See* D.E. 1 at ¶12; Defendants Answer to D.E. 1 at ¶12; *See* Exhibit A at ¶6; Exhibit B at ¶6. Defendants encouraged Sales Representatives to consistently work well in excess of 40 hours in given workweeks, yet instructed them not to record more than 40 hours worked. *See* Exhibit A at ¶¶9-10; Exhibit B at ¶¶9-10. When Sales Representatives recorded more than eight hours of work in a given workday, Defendants altered their time cards to reduce or eliminate the overtime hours. *See* Exhibit A at ¶15; Exhibit B at ¶15. They attended meetings where their supervisors explained Defendants' policy to deny payment for time worked in excess of 40 hours in given workweeks, but that working well in excess of 40 hours was required to meet performance goals. *See* Exhibit A at ¶¶9-10; Exhibit B at ¶¶9-10.

At the conditional certification stage, "it is sufficient to show that a facially lawful policy was implemented in an unlawful manner, resulting in a pattern or practice of FLSA violations." *Winfield v. Citibank, N.A.*, 843 F.Supp.2d 397, 405 (S.D.N.Y. 2012) ("Three of the plaintiffs . . . have submitted declarations in which each states that each 'was told by management that [assistant directors of admission] at defendants' schools across the country also had to work over forty hours per week, and were denied overtime.' This is sufficient evidence to satisfy plaintiffs' burden at

this early stage.") In the instant case, Defendants' timekeeping practice violates the FLSA, and the time records produced by Defendants are inaccurate.

Moreover, Defendants' uniform written wage and hour policies do not conform with the FLSA. Defendants' Compensation Policy states: "<u>Employees</u> are responsible for ensuring that time records are accurate and complete." *See* Exhibit E [SFS Employee Handbook] (emphasis added). This policy plainly violates both the FLSA and well-established precedent. Under the FLSA, <u>employers</u> shoulder the exclusive burden to "make, keep, and preserve" accurate time records of employee hours. *See* 29 U.S.C., §211(c). Further, the Supreme Court held in *Anderson v. Mt. Clemens Pottery Co.* that "it is the <u>employer</u> who has the duty under [§211(c)] of the Act to keep proper records of wages, hours, and other conditions and practices of employment." 328 U.S. 680, 687 (1946) (emphasis added). The Court further held that the burden of producing evidence of the precise number of hours performed by each employee shifts to the employer where the employer fails to keep accurate or adequate pay records. *Id.*, at 687-88. Accordingly, it is Defendants' duty to maintain accurate time records for Plaintiffs.

Defendants' time logs clearly show an inaccurate record of Plaintiffs' time worked. Defendants produced the time logs for Schur and Bagley. *See* Group Exhibit F [ADP Time Logs]. Both Bagley and Schur attended Defendants' two-week training program for newly hired sales consultants from June 6, 2016 through June 17, 2016. *See* Exhibit A at ¶9; Exhibit B at ¶9; Group Exhibit F. The ten-day new hire training agenda outlines a daily schedule where employees typically started their days at 9:30 am and ended at 7:00 pm. *See* Exhibit G [SFS Sales Consultant New Hire Training Agenda]; Exhibit A at ¶13; Exhibit B at ¶13. However, the time cards for Bagley and Schur from June 6, 2016 through June 17, 2016 read as "8:00 AM – 4:00 PM" every day which, as both Plaintiffs aver, is wrong. *See* Group Exhibit F; Exhibit A at ¶13; Exhibit B at

11

¶13. These discrepancies clearly evidence that Defendants fallaciously entered the hours worked by employees.

Defendants' failure to accurately record time worked by Sales Representatives did not cease after their training. Significantly, both Schur and Bagley were subject to Defendants' similar, if not identical, practice to deny earned overtime wages throughout their employment. *See* Group Exhibit F; Exhibit G; and Exhibit A at ¶¶13, 15; Exhibit B at ¶¶13, 15. At this early stage, these facts meet and exceed a "modest factual showing" that Sales Representatives are similarly situated.

C. **Plaintiffs Have Demonstrated a Reasonable Basis for a Collective Action**

At this initial stage, a motion to proceed as a collective action and the right to issue notice should be granted because Plaintiffs have demonstrated a "modest factual showing" that they were victims of a common, violative policy. *Schaefer*, 122 F.Supp.3d at 195; *Benavides*, 166 F.Supp.3d, at 478. To determine whether Plaintiffs meet this burden, courts employ a relatively lenient evidentiary standard in determining whether a collective action is appropriate. *Malloy*, 2009 WL 1585979, at *2.

Here, Plaintiff's Complaint along with his supporting evidentiary exhibits confirm Defendants' common scheme to require Sales Representatives to work over 40 hours in given workweeks without overtime compensation, in violation of the FLSA. The detailed allegations of the Complaint, along with sworn declarations, the new hire training agenda, and the time logs submitted with this memorandum of law, demonstrate an unmistakable policy, plan or practice which violates the FLSA.

In this case, facilitation of notice to potential Plaintiffs is warranted based upon:

a. The detailed allegations of Plaintiff's Complaint, including a description of the claims, Defendants' employment and compensation practices, and their failure to pay the

      requisite minimum wage and overtime for hours worked over 40 in given workweeks. *See* D.E. 1 at ¶¶12-53;

b. Consent forms filed by Daniel Schur and Halton Bagley alleging that they worked in excess of 40 hours per week and were denied overtime compensation. *See* D.E. 23-1;

c. Declarations from Daniel Schur and Halton Bagley confirming that they worked in excess of 40 hours in given workweeks and were denied earned overtime wages. *See* Exhibit A at ¶9-10, 13, 15, 14; Exhibit B at ¶9-10, 13, 15, 14; and

d. Comparisons of Daniel Schur and Halton Bagley's time logs from June 6, 2016 to June 17, 2016 and the actual training agenda for these employees from June 6, 2016 to June 17, 2016, demonstrating that hours entered by supervisors were inconsistent with hours actually worked by employees. *See* Exhibits F-G.

Thus, Plaintiffs have exceeded the "modest factual showing" standard required to proceed as a collective class action. *Schaefer*, 122 F.Supp.3d at 195; *Benavides*, 166 F.Supp.3d at 478. Plaintiffs' proof is adequate to support a finding that there are "similarly situated" Sales Representatives who should be notified of this action and given an opportunity to opt-in to this case.

**D.  Sales Representatives Should be Notified of this Case Before the Statute of Limitations Runs**

Notice to potential "opt-in" plaintiffs in this case should be expedited to protect their rights and prevent their statutes of limitation from running. Court-authorized notice to potential opt-in plaintiffs is a "well settled" power of district courts in FLSA actions. *Varghese*, 2016 WL 4718413, *5; *Braunstein v. Eastern Photographic Labs, Inc.*, 600 F.2d 335 (2d Cir. 1978). Since the filing of an FLSA claim does not toll the statute of limitation, "courts routinely approve court-authorized notice in order to ensure that potential claimants understand their rights and the erosion of their claims as time passes." *Varghese*, 2016 WL 4718413, *5. Courts typically authorize notice after a plaintiff makes a "modest factual showing" that the proposed recipients are "similarly situated" in their suffering under a common policy. *Id.*

For each passing day that notice is not provided to potential opt-in Plaintiffs, Sales Representatives with genuine claims are being deprived of their right to seek redress in an appropriate judicial forum. This is particularly true for former Sales Representatives whose claims are fixed by the statute of limitations and only extend two (2) or three (3) years back from the date they file their consent to "opt-in" with this Court. Plaintiffs' proposed notice [Exhibit H] therefore is essential to inform Sales Representatives of the requirements necessary to protect their interests. Without notice, potential members of the class cannot make an informed decision as to whether they should join this case. Instead, their claims will be diminished or eliminated merely by the operation of time.

As Defendants represented to this Court, there are hundreds of additional similarly situated current and former Sales Representatives who worked for Defendants during the statutory period. These individuals should be given notice and an opportunity to opt-in to this lawsuit. *See* Exhibit I at page 8 ¶¶ 15-22 [May 11, 2017 Hearing Transcript]; Exhibit A at ¶4; Exhibit B at ¶4; Exhibit J [press release stating that SFS has over 500 employees]. Without notice of this case, however, these Sales Representatives may lose their opportunity to contest Defendants' illegal payment scheme or vindicate their rights. As the statute of limitations continues to run, to the detriment of hundreds of potential opt-in plaintiffs, it is appropriate for this court to order that notice be given in a timely manner.

### E.    Plaintiffs' Proposed Notice is Fair and Adequate

"Although Section 216(b) does not explicitly address court-authorized notice to potential opt-in plaintiffs, 'it is "well settled" that district courts have the power to authorize an FLSA plaintiff to send such notice." *Varghese*, 2016 WL 4718413, *5 (citing *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d. 101, 104 (S.D.N.Y. 2003). Collective "opt-in" actions depend

on "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche,* 493 U.S. at 170. Court-authorized notice also prevents "misleading communication." *Id.* at 172.

Plaintiffs' proposal for court-approved notice to potential opt-in plaintiffs meets the requirements of "timeliness, accuracy and information." *Hoffman-LaRoche,* 493 U.S. at 172. The proposed notice informs similarly situated Sales Representatives of this action and gives them the opportunity to join. *See* Exhibit K [opt-in form]. It also accurately describes Plaintiffs' legal claims. Finally, the notice provides clear instructions on how to "opt-in" to the lawsuit and sets forth the prohibition against discrimination or retaliation for participation in this FLSA action. *See* Exhibit H.

Plaintiffs propose that notice be provided through two methods. First, as an efficient way to reach all Collective Action Members currently employed by the Defendants, the Court should Order the Defendants to prominently post a notice, along with consent forms, in their office facilities at which Sales Representatives work. Second, Plaintiffs propose that the Proposed Notice and Opt-in Consent Form be sent via first class United States mail and e-mail to all current and former Sales Representatives employed by Defendants within the past three (3) years. Additionally, Plaintiffs request that potential opt-in plaintiffs interested in participating in this lawsuit be provided within 60 days from the date of mailing to "opt-in" to this case. Plaintiffs' request is consistent with established practice under the FLSA. *Hoffman-LaRoche,* 493 U.S. at 172. Plaintiffs' proposed notice is fair and accurate and should be approved for distribution.

## V. <u>CONCLUSION</u>

Based upon the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion as follows:

a. Conditionally certify this case as a Section 216(b) collective action;

b. Require Defendants to produce a computer-readable data file containing the names, home addresses, email addresses and telephone numbers of such potential opt-in Plaintiffs so that notice may be issued;

c. Authorize notice by United States first class mail and email to all similarly situated persons employed by Defendants, who are or were employed as Sales Representatives or other similarly titled positions from January 25, 2014 to the present to inform them of their right to opt-in to this lawsuit; and

d. Require Defendants to prominently post the notice and opt-in consent forms at their 711 3rd Avenue, 6th Floor, New York, NY facility and any other facility where Sales Representatives employed by them work.

Dated: June 30, 2017                         Respectfully Submitted,


<u>/s/ James B. Zouras, Esq.</u>
James B. Zouras
Ryan F. Stephan
Teresa M. Becvar
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, IL 60601
(312) 233-1550
jzouras@stephanzouras.com
rstephan@stephanzouras.com
tbecvar@stephanzouras.com

<u>/s/ Jonathan I. Nirenberg</u>
Rabner Baumgart Ben-Asher & Nirenberg, PC
52 Upper Montclair Plaza
Upper Montclair, New Jersey 07043
(973) 744-4000
jnirenberg@njemploymentlawfirm.com

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on June 30th, 2017, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

    */s/ James B. Zouras*