# EXHIBIT I

```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
                ------------------------------x

                DANIEL SCHUR,

                              Plaintiff,


                         v.                        17 Civ. 546 (PGG)

                STRATEGIC FINANCIAL SOLUTIONS,
                LLC, et al.,
                                                   Conference
                              Defendants.

                ------------------------------x

                                                   New York, N.Y.
                                                   May 11, 2017
                                                   10:30 a.m.

                Before:

                         HON. PAUL G. GARDEPHE

                                                   District Judge




                         APPEARANCES



                STEPHAN ZOURAS LLP
                     Attorneys for Plaintiff
                BY:  JAMES B. ZOURAS (tel.)
                     JONATHAN I. NIRENBERG


                KAUFMAN DOLOWICH & VOLUCK LLP
                     Attorneys for Defendants
                BY:  MICHAEL A. KAUFMAN
                     MATTHEW R. CAPOBIANCO
```

1        (Case called; in the robing room)

2        THE COURT:  Mr. Zouras, this is Judge Gardephe.

3        MR. ZOURAS:  Good morning, your Honor.  Thank you for
4   allowing me to appear by phone.

5        THE COURT:  I have with me Mr. Nirenberg, and then I
6   have Mr. Kaufman and Mr. Capobianco as well, and we also have a
7   court reporter.

8        Let me say for the record that this is an FLSA and New
9   York Labor Law claim for unpaid overtime and that the defendant
10  is involved in the business of debt consolidation services.
11  Plaintiff worked in that capacity selling those services,
12  alleges he was not paid in compliance with the law.

13       Have there been any settlement discussions between the
14  parties?  Mr. Nirenberg or Mr. Zouras, have you tried to settle
15  the matter with defense counsel?

16       MR. ZOURAS:  Yes, your Honor.  In the process, defense
17  counsel approached us and offered to provide us some data for
18  what was then an individual by the name of Daniel Schur, who
19  brought the case.  Subsequently, another opt-in plaintiff
20  joined the case.  They offered to provide data for those two
21  individuals, and they haven't done that.  We have evaluated it.
22  We appreciate those efforts.

23       A couple of reasons we can't really engage in
24  meaningful discussions at this time.  We have brought the case,
25  as you noted, as a class and collective action, so we would

1  need to determine, number one, the scope of the class, exactly
2  what we are talking about.  Number two, we need to engage in
3  discovery to vet out some of the issues we have raised and some
4  of the defenses the defendants have raised.
5         It isn't so much that we engaged in a settlement
6  discussion in terms of making an offer, making a demand, or
7  anything like that.  That's a bit premature.  But at least we
8  have engaged in a meaningful dialogue to let everybody know
9  where we stand.  I think the process was helpful for at least
10 vetting the issues and hopefully narrowing what is really in
11 dispute.
12        THE COURT:  It sounds like this is not a case that is
13 going to settle based on the individual who brought the case or
14 the person who opted in, that if there is going to be a
15 settlement here, it is going to going to have to be on a
16 collective or class basis.  Is that what you are saying?
17        MR. ZOURAS:  That is correct, your Honor, yes.
18        THE COURT:  Let me ask defendants, do defendants
19 intend to oppose a motion for court-authorized notice?
20        MR. KAUFMAN:  Your Honor, I guess the answer is we
21 may.  The reason I'm saying that is we are a little frustrated
22 by this whole process.  From the beginning of this case, we
23 have turned over both payroll records and door punches in the
24 building showing when people are coming and going.  We have
25 offered to give more information to try to show you that there

1  is no claim here.

2           We've given them all the payroll records for both
3  Daniel Schur and Haldon Bagley. Daniel Schur, the lead
4  plaintiff, we would say arguably owes us about $60 that we
5  overpaid him. And this other person, Haldon Bagley, we owe 21
6  cents to. If there are other issues with our payroll keeping,
7  we have tried to rectify them on a weekly basis. There is no
8  issue here.

9           In fact, I have said this over and over again to
10 plaintiff's counsel, there are two sets of electronic records
11 here. The person cannot work unless they are logged in to
12 their computer. When they enter a building, there is a punch
13 that shows up electronically.

14          So we are a little frustrated. We have asked for a
15 demand of any sort to try to move this along. We do understand
16 that they have rights to go forward on a collective or class
17 basis. But at some point in time you see enough of these cases
18 and know there is nothing here. If there is some way we could
19 expedite moving this along. We have tried. We have opened our
20 books. Tell us. This is not one of those big cases.

21          THE COURT: Mr. Zouras, do you believe there is some
22 reason to distrust the accuracy of the records that defense
23 counsel has referred to?

24          MR. ZOURAS: Yes, your Honor. The fundamental point
25 of our case has always been that the time these folks are

1  working, in other words, when they are physically at the office
2  and time is being recorded, the defendant at that time is not
3  accurately recording all time worked.
4         In other words, they who are controlling the
5  timekeeping system are falsely recording time that indicates it
6  is only 40 hours a week or at least just slightly over 40 hours
7  a week, when in reality these folks are working off the clock
8  as many as 50 hours a week.
9         So, when they now produce data saying, hey, it only
10 shows 40, we paid for 40, hey, it only shows 41, we paid for
11 41, we already know that is what those records that they are
12 going to show us say.  But that's not the point of our case,
13 your Honor.
14        With respect to the data that apparently came from the
15 building, we have no reason to refute it, to disagree with it.
16 It shows when persons entered the building and exited.  We all
17 know about badge light data.  When you enter the building, it
18 will show you entering the building.  There is no record of
19 when somebody left though.  So those records have some value,
20 but those records are also limited.
21        THE COURT:  What I heard from defense counsel is that
22 in order for the person to be working, they would have to be
23 logged on to the computer.  What I derive from that is one
24 could tell when someone had logged on and when they had logged
25 off and thereby reliably determine how many hours they had

1  actually worked.  Is there some reason to distrust that?

2          MR. ZOURAS:  I don't know.  But that's not the data
3  that we have received, your Honor.  What we have received are
4  time record data.  That data is not showing, hey, this is when
5  somebody logged in and logged out of the computer.  That data
6  may very well exist somewhere.  But that is not what we have to
7  date.

8          MR. KAUFMAN:  Your Honor, if I haven't been clear in
9  the past in plaintiff's counsel, then I will clear this up.
10 That data is all based on when they are on their computer.
11 When they log off, there is nothing for them to do.  They can't
12 make phonecalls, they can't do anything.  They have to have the
13 the data in front of them.  They have to be logged on.

14         I just would add that while I do understand that the
15 time swipes only show when somebody is coming, not going, the
16 plaintiff or lead plaintiff in this case averaged leaving or
17 coming into the building six times a day.  There is certainly a
18 lot of validity to that time information.  I'm not sure what
19 else I can add to this.

20         THE COURT:  First of all, counsel is not on same page
21 as to what the records that have already been produced show.
22 That suggests to me that it might make sense to take a little
23 more time to understand what has been produced and to make sure
24 that there is reason to believe that people were working more
25 hours than they were paid for.

1            It does seem to me, if one accepts what defense

2   counsel has represented, first of all, that an employee cannot

3   do work until they are logged on.  That's number one.  Point

4   two is there is a record of when employees log on and log off.

5   Just based on that, it would seem that the parties could reach

6   an agreement on how many hours a particular employee worked.

7            I would suggest that you attempt to reach a common

8   understanding on that point before we go much further unless

9   someone tells me differently, and you are welcome to do so.  I

10  would suggest that the lawyers spend another, say, 30 days to

11  figure out whether there is a way to reach a resolution here.

12  If someone is violently opposed to that, say so.  Based on what

13  I have seen so far, I think it would be a shame to embark on

14  discovery and motion practice under the circumstances.

15           Mr. Zouras, what do you say?  Are you willing, you and

16  Mr. Nirenberg, to have a few more conversations with defense

17  counsel about these records and what they show?

18           MR. ZOURAS:  Sure.  We are happy to do that, your

19  Honor.  Again I need to emphasize the point of our discussions

20  and the area of controversy.  We have done this for 20 years

21  now, so we understand this and we bring cases like this all the

22  time.

23           We have seen records that are computer records, log

24  in/log out records, where the human using the computer has to

25  input something to turn the computer on and turn it off, and

1  you can get a corresponding record of that. We can bear down,
2  number one, to see if those records have been produced and, if
3  not, do they exist. We are happy to have that discussion, your
4  Honor.
5       THE COURT: I would suggest that you take 30 days to
6  do that. At the end of that period, if you are not able to
7  reach resolution, you will let me know, I'll enter a case
8  management plan. The one you have proposed is quite lengthy.
9  Before I would approve any period remotely like that, I would
10 need to understand why a period of 90 or more days is
11 appropriate in this type of case. It is a little bit hard to
12 get a grasp of the case because I have no idea of the size of
13 the putative or collective class. Does anyone here have any
14 idea how many people we might be talking about?
15      MR. KAUFMAN: I think it is 400 or so. Is that
16 correct? Somewhere in that range.
17      THE COURT: Do you have any sense, Mr. Zouras, of how
18 many people we are talking about?
19      MR. ZOURAS: Yes, your Honor. We pegged it at
20 somewhere between 3 to 500 folks, somewhere in that
21 neighborhood. That's under the 6-year New York statute of
22 limitations, your Honor.
23      THE COURT: All right. What I would like you to do is
24 take another 30 days to exchange information, talk about the
25 documents or the computer-derived information that's been

1   provided.  If you are not able to reach agreement on the case.
2   I'll enter a case management plan at the end of that period.
3           I'm going to want to know at that point whether
4   defense counsel is going to oppose a motion for the
5   dissemination of court-authorized notice.  If so, I want the
6   lawyers to propose a schedule for briefing on that.  As
7   everyone here knows, the standard for dissemination of notice
8   is quite low.  But if it is going to be litigated we will need
9   to set a schedule for that.
10          I will need justification for anything like the period
11  of discovery that was initially requested, so that will have to
12  be included.  If at any point anyone would like a referral to
13  the assigned magistrate, we have an excellent magistrate judge
14  assigned to the case, Judge Pitman.  He is available to you for
15  settlement purposes if at any point you think that would be
16  helpful.
17          MR. KAUFMAN:  Your Honor, if I may add.  To verify our
18  records also, we have an affidavit we have given to them from
19  our head of human resources verifying both sets of records that
20  we have turned over.  We are trying to move this along.
21          THE COURT:  I hope you can.  It is in everybody's
22  interest to bring the thing to a rapid resolution if we can
23  before more time and effort is invested in the case.  If you
24  can't, you will send me a letter in 30 days addressing the
25  issue of court-authorized notice, the length of the discovery

1   period, and I will enter a case management plan at that point.
2               Mr. Zouras, is there anything else you want to say?
3               MR. ZOURAS:  No.  I think we have covered all of the
4   issues at hand, your Honor.
5               THE COURT:  How about counsel here in the room?
6   Anything else anyone wants to say?
7               MR. KAUFMAN:  No, your Honor.
8               THE COURT:  Thank you all.  Good day.
9               (Adjourned)