UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   2 / 15 / 18
```

DANIEL SCHUR, Individually, and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

          - against -

STRATEGIC FINANCIAL SOLUTIONS,
LLC; STRATEGIC CONSULTING, LLC;
RYAN SASSON; and KIM CELIC,

                    Defendants.

**ORDER**

17 Civ. 546 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          In this putative collective and class action brought under the Fair Labor Standards

Act ("FLSA"), 19 U.S.C. §§ 201, et seq., and the New York Labor Law, Plaintiff Daniel Schur

seeks to recover unpaid overtime compensation from his former employers, Defendants Strategic

Financial Solutions LLC, Strategic Consulting LLC, Ryan Sasson – Strategic's chief executive

officer, and Kim Celic – Strategic's Vice President of Human Resources.  (Cmplt. (Dkt. No. 1)

¶¶ 1, 6, 9-10, 37-53)  Halton Bagley has opted into the action.  (Dkt. No. 23)

          Defendants have moved to compel Plaintiffs to submit their overtime claims to

arbitration and to dismiss the Complaint or, in the alternative, to stay judicial proceedings until

arbitration is complete, pursuant to the Federal Arbitration Act.  (Def. Mot. (Dkt. No. 50))  For

the reasons stated below, Defendants' motion to compel arbitration will be granted, and the

action will be stayed pending the outcome of arbitration.[1]

---

[1] In Katz v. Cellco Partnership, the Second Circuit held that "the text, structure, and underlying
policy of the [Federal Arbitration Act] mandate a stay of proceedings when all of the claims in
an action have been referred to arbitration and a stay requested."  Katz, 794 F.3d 341, 347 (2d
Cir. 2015).  "The Second Circuit [subsequently] held that a stay is required even when the

## BACKGROUND

The Complaint was filed on January 25, 2017, and asserts claims for unpaid overtime under the FLSA and the Labor Law. (Cmplt. (Dkt. No. 1)) Schur alleges that he worked as a sales consultant for Defendants from June 2016 to December 2016. (Id. ¶¶ 6, 8, 11) His primary job duty was to sell Defendants' debt consolidation services. (Id. ¶ 12) Schur alleges that he was paid on an hourly basis and generally worked ten or more hours a day, five days a week. (Id. ¶¶ 13-15) Schur also alleges that Defendants did not maintain accurate records of the hours he worked, and "instructed Plaintiff[] not to record more than 40 hours in any given workweek," despite knowing that Plaintiff worked in excess of that amount. (Id. ¶¶ 16-17)

As discussed below, Plaintiffs claim that Defendants have not asserted their request for arbitration in a timely manner. Accordingly, the Court sets out below the progress of this litigation from the January 25, 2017 filing of the Complaint until Defendants' August 9, 2017 letter seeking enforcement of an arbitration provision in Plaintiffs' employment agreements.

On January 27, 2017, the Court scheduled an initial pretrial conference for April 27, 2017. (Dkt. No. 14) At Schur's request, the initial conference was adjourned to May 11, 2017. (Dkt. Nos. 15, 17) On February 14, 2017, Bagley joined the action as a party plaintiff. (Dkt. No. 23) On March 22, 2017, Defendants filed an Answer generally denying the

---

defendant [] requested 'either a stay or a dismissal.'" Alvarez v. Nat'l Debt Relief, LLC, No. 16 CV 4156 (CM), 2017 WL 2876478, at *3 (S.D.N.Y. June 23, 2017) (quoting Virk v. Maple–Gate Anesthesiologists, P.C., 657 F. App'x 19, 20 (2d Cir. 2016) (holding that, under Katz, the district court lacked discretion to dismiss a case where the defendant's motion to compel arbitration sought either a stay or dismissal)); see also Abel v. All Green Bldg. Servs. of New York LLC, No. 16 CV 8522 (JPO), 2017 WL 5468764, at *1-2 (S.D.N.Y. Nov. 14, 2017) (ordering a stay where defendant moved to dismiss on the basis of an arbitration agreement or, in the alternative, to stay the case pending arbitration).

Complaint's allegations and asserting seventeen affirmative defenses.  (Dkt. No. 28)

Defendants' Answer contains no mention of an arbitration agreement.

On March 31, 2017, Plaintiffs served document requests and interrogatories on

each defendant.  (Dkt. No. 53-1)  On April 4, 2017, Plaintiffs served their initial disclosures.

(Dkt. No. 53-2)

Shortly before the May 11, 2017 pretrial conference, the parties submitted a joint

letter setting forth a proposed case management plan.  In their joint letter, the parties also

discussed anticipated motions.  (May 4, 2017 Joint Ltr. (Dkt. No. 32))  Plaintiffs stated that they

intended to move for the dissemination of court-authorized notice to the putative collective,

while Defendants reported that they planned to move for summary judgment at the close of

discovery.  (Id. at 2)  Defendants did not state that they intended to file a motion to compel

arbitration.  (Id.)

At the May 11, 2017 initial pretrial conference, the Court asked if the parties had

engaged in settlement discussions, and Defendants reported that – in an effort to resolve the case

quickly – they had produced payroll records for Schur and Bagley, as well as "door punches in

the building showing when people are coming and going."  (May 11, 2017 Tr. (Dkt. No. 53-3) at

3-5)  Defendants claimed that employees could not work "unless they are logged in to their

computer," and that "[w]hen they enter a building, there is a punch that shows up electronically."

(Id. at 5)  Plaintiffs responded that they had "no record of when somebody left" the building, so

the value of the records they had received was "limited."  (Id. at 6)  Defendants replied that they

had provided data "based on when [Plaintiffs] were on their computer," and that, "when

[Plaintiffs] log[ged] off, there [wa]s nothing for them to do."  (Id. at 7)

Because it appeared that a settlement might be possible (see id. at 8-9), the Court directed the parties to "take another 30 days to exchange information, talk about the documents or the computer-derived information [that had] been provided," and then submit a status letter. (Id. at 9-10)  The Court deferred entry of a case management plan at that time, and instructed Defendants to address in the status letter whether they intended to oppose Plaintiffs' motion for court-authorized notice.  (Id. at 10)

On June 29, 2017, the parties submitted a joint letter reporting that they had not been able to settle the case, and that Plaintiffs intended to move for court-authorized notice the next day.  (June 29, 2017 Joint Ltr. (Dkt. No. 34))  The parties proposed a briefing schedule concerning Plaintiffs' anticipated motion for court-authorized notice, but advised the Court that they were "exploring the possibility of stipulating" to notice.  (Id.)  Plaintiffs filed their motion on June 30, 2017.  (Dkt. No. 35)

On July 13, 2017, the Court held a telephone conference to address Plaintiffs' motion.  (See July 13, 2017 Tr. (Dkt. No. 53-4))  During this conference, Defendants represented that they were optimistic that the parties could reach an agreement concerning court-authorized notice.  (Id. at 10-11)  The parties also discussed documents Defendants had provided in informal discovery; Defendants acknowledged that these records demonstrated that employees did not "always use the[ir] computer[s]" when at work, and that "looking at the computer record itself may not be telling."  (Id. at 4-5)  A review of the records revealed "isolated incidents where calls were made" after employees "had logged out."  (Id. at 5)  At the conclusion of the conference, the Court scheduled another telephone conference in thirty days' time, and ordered the parties to state at the next conference whether they had reached agreement on court-authorized notice, and to propose a discovery schedule.  (Id. at 10-11)

In an August 9, 2017 letter (Dkt. No. 40), Defendants gave notice that they intended to move to compel arbitration based on the following provision in Plaintiffs' employment agreements:

> Other than the rights available to the Company set forth in Section 6 hereof, Employee and the Company hereby agree that in the event of any dispute arising out of or by reason of this Agreement (including, but not limited to claims of unlawful termination based on race, gender, age, national origin, disability, breach of contract of any other bias prohibited by law), or any other disagreement of any nature, type or description regardless of the facts or legal theories which may be involved, such dispute shall be resolved by confidential binding arbitration before Judicial Arbitration and Mediation Service ("JAMS"), pursuant to the Federal Arbitration Act (9 U.S.C. §1, et seq.). Similarly, any disputes arising during your employment involving claims of unlawful discrimination or harassment under federal or state statutes shall be submitted exclusively to confidential binding arbitration only in New York, New York. The arbitrator's award in any such proceeding shall be final and binding, and a judgment upon such award may be enforced by any court of competent jurisdiction. Arbitration shall be the exclusive means of resolving any dispute arising out of the Employee's employment with the Company (other than the Company's rights set forth in Section 6 hereof) and no other action may be brought by the Employee.

(Capobianco Aff., Ex. B (Schur Employment Agreement) (Dkt. No. 51) at 22; Capobianco Aff., Ex. D (Bagley Employment Agreement) (Dkt. No. 51) at 32)

On August 10, 2017, the Court ordered the parties to propose a briefing schedule for Defendants' proposed motion to compel arbitration. (Dkt. No. 41) The Court also inquired whether Defendants would agree to toll the statute of limitations for Plaintiffs' FLSA claim. (Id.) On August 21, 2017, this Court "so ordered" the parties' proposed briefing schedule (Dkt. No. 43), and on September 21, 2017, the Court "so ordered" a tolling agreement entered into by the parties. (Dkt. No. 49)

In opposing Defendants' motion to compel arbitration, Plaintiffs do not dispute that the arbitration provision is valid and applicable to their claims. (See Pltf. Opp. (Dkt. No. 53)) Plaintiffs argue, however, that Defendants waived their right to move to compel arbitration.

Plaintiffs contend that whether Defendants failed to act out of negligence or strategically delayed their request for arbitration, the delay has "severely prejudice[d] Plaintiffs and provide[d] an unfair tactical advantage to Defendants." (Id. at 2)

## DISCUSSION

## I.   LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that a party to an arbitration agreement may petition a district court for "an order directing that . . . arbitration proceed in the manner provided for in such an agreement." 9 U.S.C. § 4. The FAA was enacted to "revers[e] centuries of judicial hostility to arbitration agreements," Bird v. Shearson Lehman/ Am. Express, Inc., 926 F.2d 116, 119 (2d Cir. 1991) (internal quotation marks and citation omitted), and "embodies the national policy favoring arbitration. . . ." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).

"In resolving a claim that an action must be arbitrated pursuant to an arbitration agreement, this Court must determine:  (1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration." Begonja v. Vornado Realty Tr., 159 F. Supp. 3d 402, 408-09 (S.D.N.Y. 2016) (citing Guyden v. Aetna, Inc., 544 F.3d 376, 382 (2d Cir. 2008)).

Here, Plaintiffs do not dispute that they entered into a valid arbitration agreement, that their claims fall within the scope of that agreement, and that their FLSA and Labor Law

claims are susceptible to arbitration. See Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 332, 334 (S.D.N.Y. 2003) (holding that FLSA and New York Labor Law overtime claims were subject to arbitration provisions). Instead, Plaintiffs contend that, as a result of Defendants' delay, they have waived their right to seek arbitration.

"The 'strong federal policy favoring arbitration . . . ha[s] led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration.'" Katsoris v. WME IMG, LLC, 237 F. Supp. 3d 92, 100-01 (S.D.N.Y. 2017) (quoting Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir. 1995)). "As the Second Circuit has repeatedly emphasized, 'waiver of the right to arbitration is not to be lightly inferred.'" Id. at 101 (quoting Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 104-05 (2d Cir. 2002)). Nonetheless, courts have found that parties waived their right to arbitrate when they expressed their "intent to litigate the dispute in question." La Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159 (2d Cir. 2010).

In determining whether a party has waived a right to arbitration, courts "consider the following three factors: '(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice.'"[2] Id. (quoting Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 229 (2d Cir. 2001)). While "there is no rigid formula or bright-line rule" for determining waiver, "'[t]he key to waiver analysis is prejudice,'" and waiver

---

[2] Plaintiffs argue that "an additional factor to consider is the type of arbitration agreement at issue – 'employer-promulgated' or 'individually-negotiated.'" (Pltf. Opp. (Dkt. No. 53) at 8 (emphasis in original)) Plaintiffs have not cited any authority for this proposition, however.

"'may be found only when prejudice to the other party is demonstrated.'" Id. (quoting Thyssen, 310 F.3d at 105).

## II.   <u>ANALYSIS</u>

As to the delay in requesting arbitration, six and a half months passed between the filing of the Complaint and Defendants' notice to Plaintiffs and the Court that they intended to seek enforcement of the arbitration provision. Courts in this Circuit have rejected waiver arguments where the delay in seeking arbitration was much longer – a year or more. See, e.g., Thyssen, 310 F.3d at 105 (finding no waiver despite one-year delay in seeking arbitration); Becker v DPC Acquisition Corp., No. 00 CV 1035 (WK), 2002 WL 1144066, at *12 (S.D.N.Y. May 30, 2002) (finding no waiver despite fourteen-month delay in seeking arbitration); In re HBLS, L.P., No. 01 CV 2025 (JGK), 2001 WL 1490696, *7-8 (S.D.N.Y. Nov. 21, 2001) (finding no waiver despite seventeen-month delay in seeking arbitration). Accordingly, the length of the delay in seeking arbitration does not support Plaintiffs' waiver argument.

The "amount of litigation" to date also does not support a finding of waiver. Over the six months that preceded Defendants' motion to compel arbitration, the parties engaged in an informal exchange of discovery, engaged in settlement discussions, and discussed court-authorized notice to the putative FLSA collective. The Court conducted two brief conferences. No case management plan was entered, and no formal discovery has been conducted. See Thyssen, 310 F.3d at 105 ("This Circuit has refused to find waiver in a number of cases where delay in trial proceedings was not accompanied by substantial motion practice or discovery."); Becker, 2002 WL 1144066, at *13 ("[P]articipation in [] limited pre-trial discovery does not constitute a waiver of the right to compel arbitration."). Although Plaintiffs served initial disclosures, interrogatories, and requests for documents, Defendants have not formally

responded to Plaintiffs' requests, Defendants have not served interrogatories or document requests of their own, and no depositions have been taken. Nor have the parties engaged in significant motion practice. Defendants filed no motions prior to their motion to compel arbitration, and Plaintiffs filed only a routine motion for the dissemination of notice to the putative FLSA collective. The Court set no briefing schedule for Plaintiffs' motion, and Defendants have not responded to it. In sum, the "amount of litigation" does not support a finding of waiver. See Katsoris, 237 F. Supp. 3d at 103 (granting motion to compel arbitration; noting that movant "did not initiate any motion practice before moving to compel arbitration" and "had not yet filed or responded to any substantive motion in [the] action").

Plaintiffs have likewise not shown any unfair prejudice flowing from Defendants' delay in seeking arbitration. In this context, the Second Circuit has identified two types of prejudice: (1) "substantive prejudice," "such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration"; and (2) prejudice due to unnecessary cost or delay. Thyssen, 310 F.3d at 105.

As to "substantive prejudice," this Court has not ruled on any motion, nor have Plaintiffs filed any motion that revealed their legal strategy. Indeed, the only motion Plaintiffs have filed is a routine application seeking the dissemination of court-authorized notice to the putative FLSA collective, and that motion was the subject of discussion between counsel before it was filed. (See June 29, 2017 Joint Ltr. (Dkt. No. 34))

Plaintiffs argue, however, that their motion for court-authorized notice "include[s] Plaintiffs' fully briefed legal strategy, a roadmap of Plaintiffs' case, and two detailed Declarations from Plaintiff[s] Schur and Bagley (in addition to thirteen other exhibits)." (Pltf. Opp. (Dkt. No. 53) at 11) According to Plaintiffs, their

> Motion and declarations expressed that [Defendants] "used [certain] time and attendance software to record time worked by its Sales Representatives . . . [b]ut Defendants modified these records so they did not accurately reflect Plaintiffs' actual work hours." They also explain in detail how employees had their hours [input] by the Human Resources Department as 8:00 am to 4:00 pm during the two-week training period, despite unrefuted evidence that employees were in fact working from approximately 9:30 or 10:00 am until 6:00 or 7:00 pm.

(Id. (internal citations omitted))

The Complaint alleges, however, that "Defendants failed to make and maintain true and accurate records of all the time worked by Plaintiffs" (Cmplt. (Dkt. No. 1) ¶ 16), and that Defendants did not pay Plaintiffs the overtime compensation required by law.  (Id. ¶¶ 17-21) Accordingly, what Plaintiffs characterize as a "roadmap" of their case amounts to a few details about how Defendants deprived Plaintiffs of the overtime compensation to which they were entitled.  Moreover, Westcode Inc. v. Mitsubishi Electric Corp., No. 15 CV 1474 (MAD), 2016 WL 3748082 (N.D.N.Y. July 11, 2016), cited by Plaintiffs (Pltf. Opp. (Dkt. No. 53) at 7-8), does not support their prejudice argument.  In that case, the court concluded that Westcode, "[i]n responding to [] motions [to dismiss counterclaims and for summary judgment], . . . was required to set forth its litigation strategy and raise any issues that may be present with Mitsubishi's claims, such that Mitsubishi would receive a substantive advantage in arbitration by having this insight into Westcode's legal arguments." Westcode, 2016 WL 3748082, at *10.  Plaintiffs have not and cannot point to any such prejudice here.

The other cases cited by Plaintiffs (see Pltf. Opp. (Dkt. No. 53) at 5-7), do not assist their cause.  In Louisiana Stadium & Exposition District v. Merrill Lynch, Pierce, Fenner & Smith, Inc, 626 F.3d 156 (2d Cir. 2010), for example, the "parties spent a significant amount of time and expense litigating" before plaintiff sought arbitration. Id. at 160.  Indeed, in the

eleven months between plaintiff's "initial filings in state and federal court and its motion to compel arbitration," defendants had

> (1) filed a motion to remove the state court action to federal court in Louisiana, (2) filed a motion to transfer the case to the Southern District of New York, (3) moved to stay the proceedings in the Eastern District of Louisiana pending the MDL Panel's decision, (4) submitted to LSED a nineteen-page, single-spaced letter identifying the deficiencies in LSED's second amended complaint, (5) filed an answer to LSED's third amended complaint, and (6) began work on a motion for judgment on the pleadings.

Id. at 159.

In Technology in Partnership, Inc. v. Rudin, 894 F. Supp. 2d 274 (S.D.N.Y. 2012), defendants had moved to dismiss on statute of limitations grounds, litigated "hotly contested discovery issues, engaged in significant pretrial discovery that may be unavailable in an arbitral forum, and forced [the plaintiff] to expend considerable resources over an almost sixteen-month period, all before ever raising the arbitration issue." Id. at 281.  In Forrest v. Unifund Financial Group, Inc., No. 04 CV 5151 (LTS), 2007 WL 766297 (S.D.N.Y. Mar. 13, 2007), "more than a year transpired between the commencement of litigation and the request for arbitration" and the parties were engaged in their "second round of merits-based motion practice." Id. at *6.  And in Kramer v. Hammond, 943 F.2d 176 (2d Cir. 1991), the party invoking the arbitration clause had "engag[ed] in [] aggressive, protracted litigation for over a four-year period," including by "litigat[ing] issues to the highest state courts of New York and South Carolina" and "petition[ing] the United States Supreme Court for a writ of certiorari." Id. at 179.

Finally, Plaintiffs argue, in a conclusory fashion, that "Plaintiffs' counsel [has] expended great time, cost, and resources through this continued litigation." (Pltf. Opp. (Dkt. No. 53) at 12)  Even if this argument were supported by facts – which it is not – "incurring legal

expenses, without more, is insufficient evidence of prejudice to justify a finding of waiver."

Becker, 2002 WL 1144066, at *13 (internal quotation marks and citation omitted); see also

Leadertex, 67 F.3d at 26 ("[P]retrial expense and delay -- unfortunately inherent in litigation --

without more, do not constitute prejudice sufficient to support a finding of waiver.").

        Analysis of the relevant factors demonstrates that Defendants have not waived

their right to arbitration.

## CONCLUSION

        For the reasons stated above, Defendants' motion to compel arbitration is granted,

and the case is stayed pending the outcome of arbitration.  The parties are directed to notify the

Court once the arbitration has concluded, and, if the arbitration has not concluded by September

1, 2018, to provide a status letter to the Court.

Dated:  New York, New York
      February 15 , 2018

                                 SO ORDERED.

                                 Paul G. Gardephe
                                 United States District Judge