

120 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

December 14, 2020

<u>Via ECF</u>

Hon. Sarah L. Cave
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re: *Daniel Schur v. Strategic Financial Solutions, LLC, et. al.*
        Case No. 17-cv-00546 (PGG) (SLC)

Dear Judge Cave:

We represent Named Plaintiff Daniel Schur, Opt-In Plaintiff Halton Bagley, and the 26 additional Opt-In Claimants who joined the collective action arbitration (collectively, "Plaintiffs") in this matter. This application is being filed jointly by the parties for approval of a settlement reached by the Plaintiffs and Defendants Strategic Financial Solutions, LLC, Strategic Consulting, LLC, Ryan Sasson, and Kim Celic (collectively, "Defendants").

This case involves claims that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), Articles 6 and 19 of the New York Labor Law, and the New York Codes, Rules, and Regulations Subpart 142-2.2, 12 NYCRR 142 (collectively, the "NYLL"). (D.E. 1.) The parties have agreed to a negotiated settlement ("Settlement Agreement") after extensive, arms-length negotiations with experienced wage and hour counsel. A copy of the Settlement Agreement is attached hereto as **Exhibit 1**. The parties respectfully request that the Court approve the settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and dismiss the case with prejudice upon full payment of settlement fund. The parties agree that the settlement is fair and reasonable and considers disputed issues as to whether Defendants violated the FLSA and NYLL and the number of hours Plaintiffs worked. For these reasons, the Court should approve the Settlement Agreement.

<u>Background</u>

Named Plaintiff Daniel Schur initiated this lawsuit on January 25, 2017 as a putative class and collective action, alleging claims for: unpaid overtime wages, liquidated damages, prejudgment interest, and attorneys' fees and costs pursuant to the FLSA and NYLL. (D.E. 1.) On February 14, 2017, Opt-In Plaintiff Halton Bagley consented to join the action as a party plaintiff. (D.E. 23-1.)

Defendants employed Plaintiffs as sales consultants, whose primary duty was to sell debt consolidation services to potential customers of Defendants. (D.E. 1 ¶¶ 11-12.) Plaintiffs allege that Defendants violated the FLSA and NYLL by requiring them to work off-the-clock without overtime pay and, when overtime hours were recorded, by failing to correctly calculate and pay all overtime pay owed. (*Id.* ¶¶ 16-18.) Defendants deny Plaintiffs' allegations on the basis that

Plaintiffs' hours were properly recorded on timecards and their allegations are contradicted by contemporaneous employment records, phone records and building records. Accordingly, Defendants assert that Plaintiffs were properly compensated for all hours worked and are not owed any back wages or any other damages whatsoever.

After a brief initial discovery period, on February 15, 2018, the Court found that Plaintiffs Schur and Bagley had signed mandatory arbitration agreements as a condition of their employment and compelled the case to proceed in arbitration. (D.E. 55.) In arbitration, the parties stipulated to send notice of the collective action to all sales consultants who signed arbitration agreements that did not include a class action waiver. As a result, in addition to Plaintiffs Schur and Bagley, 26 Opt-In Claimants joined this action.

Thereafter, the parties agreed to explore settlement of Plaintiffs' claims on a collective basis. On January 6, 2020, the parties attended a full-day mediation with a private mediator, Ruth D. Raisfeld, but were not able to reach agreement. After several subsequent telephonic mediation sessions with Ms. Raisfeld, and months of further negotiations, on August 4, 2020, the parties informed the Court that they reached an agreement to settle all claims asserted. The Court deadline to file the instant motion to approve the settlement has been extended by agreement of the parties and approval of the Court to December 14, 2020. (D.E. 64, 66, 68, 69.)

Settlement Terms

In consideration for providing a release of Plaintiffs' FLSA and NYLL wage claims, as well as any other law, regulation, or ordinance regulating the payment of wages, (including all claims for attorneys' fees, costs, liquidated damages, interest, or any other claims under the FLSA, New York state wage laws and/or any other law, regulation or ordinance regulating the payment of wages), Plaintiffs will receive a settlement of $299,000.00. The settlement amount is comprised of: 1) $169,440.63 in back wages and damages to the Plaintiffs; 2) $14,000.00 in service payments to Plaintiffs Schur and Bagley for serving as Representative Plaintiffs; 3) $104,650.00 in reasonable attorneys' fees; and 4) $10,909.37 to reimburse Plaintiffs for litigation costs expended.

Each Plaintiff's share of the settlement is based on how long they were employed by Defendants and their individual pay received (including hourly pay, commissions, and bonus pay). The settlement payments reflect a proportional distribution of the settlement fund among Plaintiffs after payment of attorneys' fees, costs, and service payments, resulting in an average net settlement award of over $5,800.00 per Plaintiff.

Argument

Courts generally recognize a "strong presumption in favor of finding a settlement fair" in FLSA cases, as courts are "not in as good a position as the parties to determine the reasonableness of a FLSA settlement." *Souza v. 65 St. Marks Bistro*, No. 15 Civ. 327 (JLC), 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (citation omitted). Courts reviewing FLSA settlement agreements for fairness consider the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;" (3) the seriousness of

the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel;" and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Here, the parties agree that the Settlement Agreement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Cheeks*, 796 F.3d at 203 (quotation omitted). There are disputed issues concerning all aspects of Plaintiffs' claims.

Plaintiffs collectively estimate that they are owed approximately $544,418.05 in damages. This figure conservatively assumes that Plaintiffs performed an average of 4 hours of off-the-clock work per week and includes liquidated damages. Defendants deny that Plaintiffs are owed any damages and argue that they complied with all FLSA and NYLL overtime provisions and properly recorded and paid Plaintiffs for all time worked.

Defendants also assert that they acted in good faith and that liquidated damages under the FLSA are not warranted. *See* 29 U.S.C. § 260; *Inclan v. New York Hospitality Gr. Inc.*, 95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015) (courts have "discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA."). Notwithstanding Defendants' arguments that Plaintiffs are entitled to no damages at all, if Defendants prevailed on this argument only, Plaintiffs' damages would be reduced to $272,209.03.

In addition, the settlement is fair and reasonable because the release of claims is limited only to Plaintiffs' "claims arising under the Fair Labor Standards Act, New York Labor Law, or any other law, regulation, or ordinance regulating the payment of wages," (*see* Ex. 1 at ¶ 1) and does not broadly release other claims against Defendants. *See Millan v. Sushibym Inc.*, No. 19 CIV. 9514 (SLC), 2020 WL 5628046, at *1 (S.D.N.Y. Sept. 21, 2020) ("The 'broad' language of the Release, *See Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 175 (S.D.N.Y. 2015), which extends far beyond Plaintiff's wage and hour claims, 'is far too sweeping to be fair and reasonable.'"); *see also Camacho v. Ess-A-Bagel, Inc.*, No. 14 Civ. 2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014) ("[T]he Court will not countenance employers using FLSA settlements to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute.").

Perhaps most critically, each Plaintiff has affirmatively consented to the settlement by individually executing the settlement agreement, and no Plaintiff has raised an objection to the settlement.[1] Moreover, settlement was reached after years of active litigation and discovery in both court and arbitration. The settlement agreement is the result of intense negotiations between experienced

---

[1] As of the filing of this motion, Plaintiffs' counsel have been unable to reach one opt-in Plaintiff, Samuel Tanner.  Pursuant to the terms of the Settlement Agreement, since Plaintiffs' counsel has not obtained his executed agreement by December 2, 2020, Tanner's claims will be dismissed without prejudice and the amount allocated to his claims—which comprises less than 1% of the settlement fund designated for the Plaintiffs—will be donated to a 501(c)(3) charity. (Ex. 1 at ¶ 4D.)

counsel with the assistance of a neutral, third-party mediator. Given the risks and uncertainties of litigation, the settlement is fair and reasonable.

Attorneys' Fees:

Pursuant to the Settlement Agreement, Plaintiffs' counsel will be paid $104,650.00 in reasonable attorneys' fees (which equals 35% of the settlement fund) and will be reimbursed $10,909.37 for their out-of-pocket expenses. The attorneys' fee award is within the range historically approved in this District. *See Martinez v. SJG Foods LLC*, No. 16-CV-7890 (RA), 2017 WL 4676828, at *2 (S.D.N.Y. Oct. 16, 2017) ("When using a percentage of the fund approach, courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (internal quotation omitted). More importantly, this amount is fair in light of the "degree of success obtained." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).[2]

Plaintiffs' counsel have a contingency fee retainer agreement with Plaintiffs through which Plaintiffs agreed to pay attorneys' fees of a reasonable percentage of the recovery or counsel's lodestar, whichever is greater, and Plaintiffs' counsel's costs and expenses will be deducted from the settlement proceeds. Given the motion practice and discovery that has taken place in the nearly four years this matter has been actively litigated in both court and in arbitration, and Plaintiffs' counsel's ability to negotiate a favorable settlement for Plaintiffs, the attorneys' fee award is appropriate. Plaintiffs' counsel's lodestar exceeds $300,000.00 as of the date of this filing—nearly three times the fee award requested in this matter. If the Court requires additional information regarding Plaintiffs' counsel's fees or costs, Plaintiffs' counsel will submit records and additional information to the Court.

Based on the foregoing, the parties believe that the Settlement Agreement is fair and reasonable and respectfully request this Court to enter an order granting approval of the settlement, incorporating the terms of the Settlement Agreement, and expressly retaining jurisdiction to interpret, implement, and enforce the terms of the Parties' settlement and all orders and judgments entered in connection therewith.

We thank you for your consideration of this request.

Respectfully submitted,

STEPHAN ZOURAS, LLP

/s/  Teresa M. Becvar
Teresa M. Becvar

cc:  Counsel of Record (via ECF)

---

[2] In *Fisher*, the Second Circuit held that there is no "proportionality limit on recoverable attorneys' fees" in an FLSA case, and thus that the courts cannot place an automatic cap on such fees at 33%. 948 F.3d 593 at 602-05.